84 N.Y.2d 519 (1994)
644 N.E.2d 1001
620 N.Y.S.2d 310
Rodger A. Padula, Appellant,
v.
Lilarn Properties Corporation, Respondent.
Court of Appeals of the State of New York.
Argued October 25, 1994.
Decided December 1, 1994.
Calli & Calli, Utica (Richard J. Reittinger of counsel), for appellant.
Felt, Hubbard & Bogan, Utica (James R. Griffith of counsel), for respondent.
Chief Judge KAYE and Judges SIMONS, BELLACOSA, LEVINE and CIPARICK concur with Judge SMITH; Judge TITONE concurs in result in a separate opinion.
*520 SMITH, J.
Plaintiff is a resident of New York and defendant is a corporation incorporated under the laws of New York. Defendant *521 owns property in Massachusetts, at which plaintiff was working, under a subcontracting agreement. Plaintiff sustained injuries when he fell from a scaffold while performing work on a construction project in Massachusetts. Plaintiff brought this action for damages, alleging violations of sections 200, 240 (1) and 241 (6) of the New York Labor Law and the rules and regulations thereunder. The issue here is the applicability of these sections of the Labor Law to this accident.
Defendant's motion for partial summary judgment dismissing plaintiff's causes of action alleging violations of the New York State Labor Law and various rules and regulations thereunder was granted by Supreme Court and affirmed by the Appellate Division. Supreme Court thereafter granted defendant's motion for summary judgment dismissing the remainder of plaintiff's complaint. This Court granted leave from the Supreme Court judgment to bring up for review the prior nonfinal Appellate Division order (CPLR 5602 [a] [1] [ii]).
We reject plaintiff's contention that New York law should apply here. New York's choice-of-law principles govern the outcome of this matter. In the context of tort law, New York utilizes interest analysis to determine which of two competing jurisdictions has the greater interest in having its law applied in the litigation. The greater interest is determined by an evaluation of the "`facts or contacts which * * * relate to the purpose of the particular law in conflict'" (Schultz v Boy Scouts, 65 N.Y.2d 189, 197). Two separate inquiries are thereby required to determine the greater interest: (1) what are the significant contacts and in which jurisdiction are they located; and, (2) whether the purpose of the law is to regulate conduct or allocate loss (id., at 198).
As to the first inquiry concerning the significant contacts and the jurisdiction in which they are located, both the plaintiff employee and the defendant owner of the Massachusetts property are domiciliaries of New York State. The other relevant actors are not parties to this lawsuit. They include the plaintiff's employer (a subcontractor which is a New York domiciliary), the tenant of the property (a Massachusetts domiciliary who contracted with the general contractor), and the general contractor (a domiciliary of Vermont). The tort occurred in Massachusetts.
As to the second inquiry, a distinction must be made between a choice-of-law analysis involving standards of conduct and one involving the allocation of losses (Schultz v Boy Scouts, 65 N.Y.2d 189, 198, supra). *522 In the former case the law of the place of the tort governs. As we stated in Schultz:
"Thus, when the conflicting rules involve the appropriate standards of conduct, rules of the road, for example, the law of the place of the tort `will usually have a predominant, if not exclusive, concern' * * * because the locus jurisdiction's interests in protecting the reasonable expectations of the parties who relied on it to govern their primary conduct and in the admonitory effect that applying its law will have on similar conduct in the future assume critical importance and outweigh any interests of the common-domicile jurisdiction." (Schultz, 65 NY2d, at 198; see also, Cooney v Osgood Mach., 81 N.Y.2d 66, 72.)
Conduct-regulating rules have the prophylactic effect of governing conduct to prevent injuries from occurring. "If conflicting conduct-regulating laws are at issue, the law of the jurisdiction where the tort occurred will generally apply because that jurisdiction has the greatest interest in regulating behavior within its borders" (Cooney v Osgood Mach., 81 N.Y.2d 66, 72, supra).
Loss allocating rules, on the other hand, are those which prohibit, assign, or limit liability after the tort occurs, such as charitable immunity statutes (e.g., Schultz v Boy Scouts, supra), guest statutes (e.g., Dym v Gordon, 16 N.Y.2d 120), wrongful death statutes (e.g., Miller v Miller, 22 N.Y.2d 12), vicarious liability statutes (e.g., Farber v Smolack, 20 N.Y.2d 198), and contribution rules (e.g., Cooney v Osgood Mach., supra). Where the conflicting rules at issue are loss allocating and the parties to the lawsuit share a common domicile, the loss allocation rule of the common domicile will apply (see, Cooney v Osgood Mach., supra, at 73 [setting forth the three Neumeier rules (Neumeier v Kuehner, 31 N.Y.2d 121) which address the "common domicile" situation in rule No. 1]).
Thus, the fundamental question in this case, where the parties share a common domicile, is whether Labor Law §§ 240 and 241 are primarily conduct-regulating or loss-allocating. The relevant Labor Law provisions, sections 240 and 241, embody both conduct-regulating and loss-allocating functions requiring worksites be made safe (conduct-regulating) and failure to do so results in strict and vicarious liability of the owner of the property or the general contractor. We hold *523 however, that sections 240 and 241 of the Labor Law are primarily conduct-regulating rules, requiring that adequate safety measures be instituted at the worksite and should not be applied to the resolution of this tort dispute arising in Massachusetts. Thus, Massachusetts law was properly applied.
Accordingly, the judgment of Supreme Court appealed from and the order of the Appellate Division brought up for review should be affirmed, with costs.
TITONE, J. (concurring).
I vote to affirm in this case for the simple reason that the Labor Law, by its terms, is inapplicable to conduct occurring outside the State. My conclusion is based on Labor Law § 242, which provides that "the provisions of [article 10] and the rules issued thereunder shall be applicable * * * throughout the state."[*] By its terms, the statute makes no provision for extraterritorial application of either article 10 or the Labor Commissioner's regulations. Moreover, under our State's rules of statutory construction, there is no basis for inferring extraterritorial effect in the face of legislative silence on the question (see, McKinney's Cons Laws of NY, Book 1, Statutes § 149 ["all laws are co-extensive, and only coextensive, with the political jurisdiction of the lawmaking power; and every statute in general terms is construed as having no extraterritorial effect"]).
In view of the foregoing, the choice-of-law "interest" analysis delineated in the writing is irrelevant (cf., Fried v Seippel, 80 N.Y.2d 32 [deeming "interests" analysis irrelevant in the face of clear statutory language limiting provision's territorial effect]). Regardless of the nature or classification of the interests involved, Labor Law §§ 200, 240 and 241 can have no effect outside of New York in the absence of any indication of a legislative intent to extend the statute's reach in that manner.
Finally, even if New York's Legislature or its Commissioner did attempt to extend the reach of those provisions to out-of-State jobsites, I would have a serious question as to whether *524 such efforts would be effective. As a matter of common sense, it would be unreasonable for New York's Labor Commissioner to establish safety rules for jobsites in Massachusetts. Indeed, the Appellate Division was right when it opined that "`[t]he New York Legislature is without authority to impose standards of conduct on contractors, owners and agents relating to a worksite located in a foreign jurisdiction'" (198 AD2d 916, quoting Brewster v Baltimore & Ohio R. R. Co., 167 AD2d 908).
In sum, since there can be no liability under Labor Law §§ 200, 240 and 241 without a violation of the statutory and regulatory standard and since those standards are inapplicable in Massachusetts, there is no basis for invoking those provisions in this litigation, regardless of whether their purpose is to regulate conduct or allocate loss. Accordingly, I would eschew use of the choice-of-law Schultz v Boy Scouts (65 N.Y.2d 189) analysis that the majority adopted in favor of a more direct approach based solely on the fact that plaintiff's causes of action depend on a regulatory scheme designed solely for use in New York. On that basis, I would affirm.
Judgment of Supreme Court appealed from and order of the Appellate Division brought up for review affirmed, with costs.
NOTES
[*] The statute provides, in full, that article 10 and its related regulations "shall be applicable exclusively throughout the state." (Emphasis added.) The term "exclusively" creates some ambiguity. On the one hand, it could be intended to mean that article 10 and the related regulations apply only in New York State. On the other hand, it could also be intended to mean that article 10 and the related rules furnish the exclusive source of regulation over the subject matter covered by the statute. Because of this ambiguity, I place no reliance on the quoted term.