Travis E. VAN DYKE, Plaintiff,

v.

COLUMBIA MACHINE, INC.,
et al., Defendants.

No. 01–CV–6357L.

United States District Court,
W.D. New York.

Feb. 18, 2003.

John L. Perticone, Levene, Gouldin & Thompson, Vestal, NY, for Plaintiff.

Michael A. Brady, Hagerty & Brady, Buffalo, NY, John R. Potter, Heurlin, Potter, Jahn, Leatham & Holtmann, Vancouver, WA, Neil A. Goldberg, Goldberg Segalla LLP, Buffalo, NY, for Defendants.

## DECISION AND ORDER

LARIMER, District Judge.

### INTRODUCTION

Plaintiff Travis Van Dyke ("plaintiff") filed this diversity action asserting claims based on negligence, breach of warranty, failure to warn, and strict products liability against Columbia Machine Inc. ("Columbia"), the manufacturer of a palletizer machine [1] owned and operated by plaintiff's employer, Leprino Foods Company ("Leprino"). Plaintiff was gravely injured while performing routine maintenance on the palletizer during work at Leprino.

Leprino is a Colorado corporation with its principal place of business in Denver.

---

1. The palletizer at issue is a Columbia Model 25B high-level infeed case palletizer, which takes sealed boxes of products and forms them into a cube on top of a pallet. Dkt. # 26, Asai Aff. ¶ 3.

It operates a cheese processing plant located directly on the New York and Pennsylvania state line. Part of the plant is located in New York and part of the plant is located in Pennsylvania. Leprino purchased the palletizer from Columbia in 1987. Columbia is a Washington corporation with its principal place of business in Vancouver, Washington. Columbia shipped the palletizer directly to the New York portion of Leprino's plant, where it was still located at the time of the accident.

Given its unique location, Leprino employs both New York and Pennsylvania residents. Leprino has a policy that workers who injure themselves in the course of their employment should avail themselves to the workers' compensation laws and benefits of the state of their residence. In this case, plaintiff, a Pennsylvania resident, applied for and received Pennsylvania workers' compensation. Dkt. # 18, Olsen Aff. ¶ 4.

Columbia filed a third-party complaint against Leprino for contribution or indemnification pursuant to New York Workers' Compensation Law § 11. Section 11 allows a third party to seek contribution or indemnification from an employer for its proportionate share of liability (if any) where an employee suffers a "grave injury" in the course of his employment and sues that third party. Section 11 is an exception to the exclusivity provisions of the Workers' Compensation Law by allowing the third party claim against the employer even though a direct action by the employee against the employer is prohibited. Because of Leprino's unique location, on the border of New York and Pennsylvania, this case presents interesting issues concerning the choice of law that should apply. In addition to New York, three other states, Pennsylvania, Washington, and Colorado all have some contacts with

this litigation and the parties. Except for New York, all of these three other states preclude actions for contribution or indemnification by third-parties against employers of injured parties. In a nutshell, Leprino claims that New York law does not apply in this situation and, therefore, the third-party complaint must be dismissed.

Leprino filed the instant motion to dismiss Columbia's third-party complaint pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim or, in the alternative, for summary judgment pursuant to Fed. R.Civ.P. 56. Leprino argues that Columbia cannot avail itself of New York's grave injury exception because Pennsylvania Workers' Compensation Law, which prohibits such an action, applies to this case. Alternatively, Leprino claims that even assuming New York law applies, Columbia cannot take advantage of Workers' Compensation Law § 11 because Leprino did not agree in writing to indemnify Columbia. Lastly, Leprino asserts that Columbia waived its right to contribution or indemnification from Leprino in certain purchase and service agreements between the parties.

Columbia argues that New York law does apply because it is the site of the accident and because New York has the greatest interest in the litigation. Columbia also claims that no writing is required to bring a claim pursuant to Section 11 and that it did not waive its right to seek contribution or indemnification from Leprino.

For the reasons that follow, I find that Pennsylvania law should apply to this case, and not New York law. Therefore, Leprino's motion to dismiss Columbia' third-party complaint is granted.

## DISCUSSION

### A. Choice of Law

█ In a case in which jurisdiction is based on diversity of citizenship, a federal

court sitting in New York State must apply New York's choice of law rules. *Alderman v. Pan Am World Airways*, 169 F.3d 99, 103 (1999), *citing Guaranty Trust Co. v. York*, 326 U.S. 99, 108–09, 65 S.Ct. 1464, 89 L.Ed. 2079 (1945); *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). In New York, the relevant analytical approach to choice of law issues is the 'interest analysis.' *See Schultz v. Boy Scouts of Am.*, 65 N.Y.2d 189, 197, 491 N.Y.S.2d 90, 480 N.E.2d 679 (1985); *In re Allstate Ins. Co. [Stolarz]*, 81 N.Y.2d 219, 225, 597 N.Y.S.2d 904, 613 N.E.2d 936 (1993).

Pursuant to the interest analysis, "the law of the jurisdiction having the greatest interest in the litigation will be applied and ... the facts or contacts which obtain significance in defining State interests are those which relate to the purpose of the particular law in conflict." *Miller v. Miller*, 22 N.Y.2d 12, 15–16, 290 N.Y.S.2d 734, 237 N.E.2d 877 (1968); *Neumeier v. Kuehner*, 31 N.Y.2d 121, 127, 335 N.Y.S.2d 64, 286 N.E.2d 454 (1972). The interest analysis adopted by the New York Court of Appeals specifically "rejected the mechanical place of injury rule in personal injury cases because it failed to take account of underlying policy considerations." *Neumeier*, 31 N.Y.2d at 127, 335 N.Y.S.2d 64, 286 N.E.2d 454. The Court recognized that it was abandoning the "certainty provided by the old rule for the more just, fair and practical result that may best be achieved by giving controlling effect to the law of the jurisdiction which has the greatest concern with, or interest in, the specific issue raised in the litigation." *Id.* Under this formulation, the significant contacts

are still the parties' domiciles and the site of the tort. *See Schultz*, 65 N.Y.2d at 197, 491 N.Y.S.2d 90, 480 N.E.2d 679. However, other significant contacts to consider are the state where the conduct causing the injury occurred, the state where the relationship between the parties is centered, and, in the context of workers' compensation, the state where plaintiff has accepted workers' compensation benefits. *See Roach v. McGuire & Bennett, Inc.*, 146 A.D.2d 89, 539 N.Y.S.2d 138 (3d Dep't 1989); *see also* Restatement (Second) of Conflict of Laws § 145 (2002).

With these contacts in mind, the choice is between the laws of New York, Pennsylvania, Washington, and Colorado. New York is the site of the Leprino plant, the site of plaintiff's employment, and consequently, the site of the accident. However, none of the parties are domiciled in New York. Plaintiff is a Pennsylvania resident and currently is receiving Pennsylvania workers' compensation as a result of this accident.[2] Columbia is domiciled in the State of Washington. Presumably, Washington is also the place where the tortious conduct occurred (that is the manufacturing of the allegedly defective product). Leprino is domiciled in the State of Colorado. However, Leprino operates manufacturing plants in New York, Pennsylvania, and at least six other states.

In *Schultz v. Boy Scouts of Am.*, 65 N.Y.2d at 198, 491 N.Y.S.2d 90, 480 N.E.2d 679, and *Cooney v. Osgood Mach., Inc.*, 81 N.Y.2d 66, 595 N.Y.S.2d 919, 612 N.E.2d 277 (1993), the New York Court of Appeals recognized a distinction between "laws that regulate primary conduct (such as

---

**2.** Columbia argues that this Court should not consider Pennsylvania law in its choice of law analysis because neither Columbia nor Leprino is a Pennsylvania resident. However, New York's interest analysis is not so rigid and courts do consider the domiciles of the parties

to the primary action as well. In addition, Leprino is located in Pennsylvania and pays for workers' compensation pursuant to Pennsylvania Law. Therefore, the Court cannot, as Columbia suggests, simply ignore Pennsylvania's interests here.

standards of care) and those that allocate losses after the tort occurs (such as vicarious liability rules). If conflicting conduct-regulating laws are at issue, the law of the jurisdiction where the tort occurred will generally apply because that jurisdiction has the greatest interest in regulating behavior within its borders. But if competing 'postevent remedial rules' are at stake other factors are taken into consideration, chiefly the parties' domiciles." *Cooney*, 81 N.Y.2d at 72, 595 N.Y.S.2d 919, 612 N.E.2d 277; *see also Schultz*, 65 N.Y.2d at 198, 491 N.Y.S.2d 90, 480 N.E.2d 679.

Here, the law at issue relates to loss allocation. *Cooney*, 81 N.Y.2d at 74, 595 N.Y.S.2d 919, 612 N.E.2d 277 ("Contribution rules—as involved in the present case—are loss allocating, not conduct regulating."). The choice of law principles relating to a loss allocating rule were articulated by the Court of Appeals in *Neumeier*, 31 N.Y.2d at 128, 335 N.Y.S.2d 64, 286 N.E.2d 454. The Court considered a conflict of laws among guest statutes (also considered loss allocating rules), and fashioned three rules to apply to cases in which loss allocating rules were in conflict. The proper rule to apply depends on the specific facts of the case and the respective domiciles of the parties.

The first *Neumeier* rule provides that "[w]here the conflicting rules at issue are loss allocating and the parties to the lawsuit share a common domicile, the loss allocation rule of the common domicile will apply." *Padula v. Lilarn Props. Corp.*, 84 N.Y.2d 519, 522, 620 N.Y.S.2d 310, 644 N.E.2d 1001 (1994); *Neumeier*, 31 N.Y.2d at 128, 335 N.Y.S.2d 64, 286 N.E.2d 454. "The second *Neumeier* rule addresses 'true' conflicts, where the parties are domiciled in different States and the local law favors the respective domiciliary .... In essence, then, the second *Neumeier* rule adopts a 'place of injury' test ...." [3] *Cooney*, 81 N.Y.2d at 73, 595 N.Y.S.2d 919, 612 N.E.2d 277; *see Neumeier*, 31 N.Y.2d at 128, 335 N.Y.S.2d 64, 286 N.E.2d 454.

Where, as here, the parties are all domiciled in different states and the accident occurred in yet another state, the so-called third *Neumeier* rule applies to such "other split-domicile cases." *Cooney*, 81 N.Y.2d at 73–74, 595 N.Y.S.2d 919, 612 N.E.2d 277. That rule provides:

> Normally, the applicable rule of decision will be that of the state where the accident occurred but not if it can be shown that displacing that normally applicable rule will advance the relevant substantive law purposes without impairing the smooth working of the multi state system or producing great uncertainty for litigants.

*Neumeier*, 31 N.Y.2d at 128, 335 N.Y.S.2d 64, 286 N.E.2d 454.

Here, New York law conflicts with the laws of Pennsylvania, Washington, and Colorado. The Pennsylvania Workers' Compensation Act, 77 Pa. Cons.Stat. § 481, prohibits contribution and indemnification claims by a third party against the employer of an injured employee, unless the employer expressly agrees in writing to be indemnified.[4] Colorado's Workers'

---

**3.** As explained in *Cooney*, 81 N.Y.2d at 73, 595 N.Y.S.2d 919, 612 N.E.2d 277, the second *Neumeier* rule "provides that when the [tortfeasor's] conduct occurred in the State of domicile and that State would not impose liability, the [tortfeasor] should not be exposed to liability under the law of the victim's domicile. Conversely, when the [victim] is injured in the place of domicile and would be entitled to recover, the out-of-State [tortfeasor] should generally be unable to interpose the law of his or her domicile to defeat recovery."

**4.** The Pennsylvania Workers' Compensation Act § 481 provides:

Compensation Law also bars third-party claims for contribution and indemnification against the employer. *See* Colo.Rev.Stat. § 8–41–102;[5] *see also Keefe v. Pizza Hut of Am., Inc.,* 868 P.2d 1092, 1094 (Colo.Ct. App.1993) *citing Williams v. White Mountain Const. Co.,* 749 P.2d 423 (Colo.1988) ("The exclusive remedy provision of the Act also bars contribution and indemnity claims against the employer by third parties who are liable to the injured employee."). Likewise, Washington's Industrial Insurance Act, Wash. Rev.Code § 51.04.010, prohibits third-party actions against employers.[6] However, where an employer expressly agrees in writing to contract its immunity away under the Act, it can be subject to indemnification or con-tribution. Even then, "an indemnity clause of this type is enforceable only if it clearly and specifically contains a waiver of the immunity of the workers' compensation act, either by so stating or by specifically stating that the indemnitor assumes potential liability for actions brought by its own employees." *Brown v. Prime Const. Co., Inc.,* 102 Wash.2d 235, 684 P.2d 73, 75 (1984).

Likewise, New York prohibits third parties from seeking contribution or indemnification from employers for claims brought by injured employees in the absence of a specific written agreement entered into prior to the accident. *See* Workers' Compensation Law § 11.[7] New York, howev-

---

(a) The liability of an employer under this act shall be exclusive and in place of any and all other liability to such employees, his legal representative, husband or wife, parents, dependents, next of kin or anyone otherwise entitled to damages in any action at law or otherwise on account of any injury or death as defined in section 301(c)(1) and (2) or occupational disease as defined in section 108.

(b) In the event injury or death to an employee is caused by a third party, then such employee, his legal representative, husband or wife, parents, dependents, next of kin, and anyone otherwise entitled to receive damages by reason thereof, may bring their action at law against such third party, but the employer, his insurance carrier, their servants and agents, employees, representatives acting on their behalf or at their request shall not be liable to a third party for damages, contribution, or indemnity in any action at law, or otherwise, unless liability for such damages, contributions or indemnity shall be expressly provided for in a written contract entered into by the party alleged to be liable prior to the date of the occurrence which gave rise to the action.

5. Section 8–4–102 of Colorado's Workers' Compensation Law provides that an employer who has complied with the Act shall not be subject:

to any other liability for the death of or personal injury to any employee, except as provided in said articles; and all causes of action, actions at law, suits in equity, proceedings, and statutory and common law rights and remedies for and on account of such death of or personal injury to any such employee and accruing to any person are abolished except as provided in said articles.

6. Washington's Industrial Insurance Act § 51.04.010 provides that:

certain relief for workers, injured in their work, and their families and dependents is hereby provided regardless of questions of fault and to the exclusion of every other remedy, proceeding or compensation, except as otherwise provided in this title; and to that end all civil actions and civil causes of action for such personal injuries and all jurisdiction of the courts of the state over such causes are hereby abolished, except as in this title provided.

7. New York Workers' Compensation Law § 11 provides in pertinent part:

For purposes of this section the terms "indemnity" and "contribution" shall not include a claim or cause of action for contribution or indemnification based upon a provision in a written contract entered into prior to the accident or occurrence by which the employer had expressly agreed to contribution to or indemnification of the claimant or person asserting the cause of action for the type of loss suffered.

er, has one important exception not found in either Pennsylvania, Washington, or Colorado. When a worker is "gravely injured," a third party may seek contribution or indemnification from the employer for its proportionate share of liability for the worker's injury.[8] Here, the parties conceded at oral argument that plaintiff suffered a "grave injury" within the meaning of Section 11.

Columbia argues that New York law should apply because it is the site of the accident, the site of Leprino's plant, the site where Columbia shipped its palletizer, and the site where plaintiff worked. Columbia also asserts that New York has an interest in applying its "Labor Law and industrial code to all industrial accidents that occur within its borders." Columbia Brief, at 8.

■ Despite Columbia's thorough memoranda of law and thought provoking argument, I believe that Pennsylvania law, not New York law, should apply to determine whether Columbia's third-party action can survive. Pennsylvania has a greater interest in protecting its statutory scheme that immunizes employers from indemnification claims than New York has in allowing such claims in the case of a grave injury. Plaintiff is a Pennsylvania resident who received Pennsylvania workers' compensation from a Pennsylvania fund into which Leprino paid. Further, Leprino is located in Pennsylvania and in New York. Although plaintiff may have worked in the New York portion of the plant, that con-

tact is pure happenstance. Therefore, the fact that the accident occurred in New York is not sufficient to justify application of New York's rule of law to this case.

New York does not have a great interest in protecting a non resident manufacturer from a loss allocating rule designed to protect resident employers. *See Neumeier*, 31 N.Y.2d at 126–27, 335 N.Y.S.2d 64, 286 N.E.2d 454 (applying Canadian guest statute to action against Canadian corporation and New York resident for death of Canadian resident because New York should not "apply New York law simply because some may think it is a better rule, where doing so does not advance any New York State interest, nor the interest of any New York State domiciliary."); *Brewster v. Balt. & Ohio R.R. Co.*, 185 A.D.2d 653, 654, 585 N.Y.S.2d 647 (4th Dep't 1992) (holding that Pennsylvania law applies to third-party action brought by two nonresident corporations because, among other reasons, "New York has no further interest in extending the benefits of its loss allocation rules to two nonresident corporations. Pennsylvania, however, has an interest in protecting its statutory scheme immunizing an employer from contribution claims.").

Moreover, application of Pennsylvania law does not offend New York's interest in insuring that employees within its borders receive just compensation for their work-related injuries. Plaintiff has received that compensation through Pennsylvania's workers' compensation scheme. Although

---

**8.** Section 11 provides in pertinent part:

An employer shall not be liable for contribution or indemnity to any third person based upon liability for injuries sustained by an employee acting within the scope of his or her employment for such employer unless such third person proves through competent medical evidence that such employee has sustained a "grave injury" which shall mean only one or more of the follow-

ing: death, permanent and total loss of use or amputation of an arm, leg, hand or foot, loss of multiple fingers, loss of multiple toes, paraplegia or quadriplegia, total and permanent blindness, total and permanent deafness, loss of nose, loss of ear, permanent and severe facial disfigurement, loss of an index finger or an acquired injury to the brain caused by an external physical force resulting in permanent total disability.

application of Pennsylvania law may not affirmatively advance the substantive law purpose of New York's grave injury exception, I find it will not frustrate that purpose either.

New York's interest in protecting contribution and indemnification rights of third parties was significantly limited after the enactment of the 1996 Omnibus Workers Compensation Reform Act, which substantially changed Section 11. The Legislature's intent was to repeal the application of *Dole v. Dow Chem. Co.*, 30 N.Y.2d 143, 331 N.Y.S.2d 382, 282 N.E.2d 288 (1972) to the Workers' Compensation scheme in New York. In *Dole,* the New York Court of Appeals had held that a defendant in a personal injury case could seek contribution from a negligent employer even though the direct action by plaintiff against the employer was barred. *Dole,* 30 N.Y.2d at 152, 331 N.Y.S.2d 382, 282 N.E.2d 288.

The 1996 amendment sought to curtail the rising insurance premiums and attendant costs of doing business in New York that employers faced since *Dole. See Majewski v. Broadalbin–Perth Cent. Sch. Dist.,* 91 N.Y.2d 577, 584–85, 673 N.Y.S.2d 966, 696 N.E.2d 978 (1998); *see also* Governor's Approval Mem. L.1996, ch. 635, at 1912 (noting that *Dole* "contradicted the foundation of the bargain struck between business and labor" in the workers' compensation scheme by "exact[ing] an unacceptably heavy financial cost from New York employers and hinder[ing] our State's ability to attract and maintain businesses and jobs while providing no benefit to injured workers.").

I recognize that the Legislature did not bar third-party claims altogether. The Legislature left the one exception at issue here for gravely injured plaintiffs. However, I disagree with Columbia's argument that the exception was meant to protect New York workers from industrial accidents, and that this interest should outweigh Pennsylvania's interest here. The exception permits only third-party contribution or indemnification actions. Even a gravely injured New York worker cannot sue his or her employer directly under the exception. In fact, the 1996 amendments sought to protect the rights of New York workers in other ways, such as providing economic incentives to employers who voluntarily undertook safety consultation or invested in machinery designed to promote the safety of the workplace. *See* Governor's Approval Mem. L.1996, ch. 635, at 1913–14.

Therefore, whatever interest New York may have had prior to the 1996 amendment is no longer relevant since the change in the law. For this reason, I find Columbia's reliance on *Jones v. Munson Transp., Inc.,* 685 F.Supp. 879 (E.D.N.Y. 1988), misplaced. *Jones* was decided when *Dole* still applied to third-party claims against employers. In *Jones,* the district court applied the interest analysis and held that New York law applied to determine whether a defendant tortfeasor could bring a third-party claim against a Wisconsin employer for injuries suffered by a Wisconsin employee while working in New York. The district court held that New York had a "strong public policy" of allowing each tortfeasor to pay its proportionate share under *Dole.* Therefore, even though the employee received Wisconsin workers' compensation, the court held that New York law applied.

The "strong public policy" relied on by the *Jones* court no longer exists, and has been replaced by a new public policy of limiting an employer's liability for workplace injuries to workers' compensation premiums, except in the case of a grave injury. In addition, the *Jones* court characterized the *Dole* rule as conduct-regulat-

ing, rather than loss allocating, thereby making the site of the injury more significant. *Jones*, 685 F.Supp. at 882. Clearly, the Legislature here intended to shift the costs from New York's employers back to the third parties sued directly by employees for work-related injuries. In this regard, the 1996 amendment can only be characterized as loss allocating. *See Cooney*, 81 N.Y.2d at 74, 595 N.Y.S.2d 919, 612 N.E.2d 277 (noting that contribution rules are loss allocating).

I also find it persuasive that the tortious conduct at issue—the allegedly defective design and manufacture of the palletizer—took place in Washington, not New York. Although New York may have an interest in deterring negligent conduct within its borders by applying its laws to industrial accidents, application of Section 11, a loss allocating rule, will not have that effect in the same way that a conduct-regulating rule could. Similarly, I am not persuaded by the fact that Columbia shipped the palletizer to Leprino in New York. The locus of the parties' contractual relationship is less relevant in a tort case that does not involve breach of contract issues.

Likewise, I find it compelling that neither the law of Columbia's domicile (Washington), the law of the domicile of the party with which it contracted (Colorado), nor the law of the domicile of the plaintiff (Pennsylvania) would permit the third-party claim. In fact, but for the grave injury suffered by plaintiff, even New York law would bar this claim. Therefore, displacing the normally applicable place of injury rule in this case will advance the relevant substantive law purposes (the exclusivity of the workers' compensation scheme)

without impairing the smooth working of the multi-state system. *Neumeier*, 31 N.Y.2d at 128, 335 N.Y.S.2d 64, 286 N.E.2d 454.

Therefore, I find that Pennsylvania law should apply because its interest in limiting employer liability is greater than New York's interest in allowing third parties to seek contribution or indemnification from employers of gravely injured workers. *See Schultz*, 65 N.Y.2d at 200–202, 491 N.Y.S.2d 90, 480 N.E.2d 679 (applying third Neumeier rule and holding that New Jersey charitable immunity law applied to bar plaintiff's claims, even though certain injuries occurred in New York); *see also Roach v. McGuire & Bennett, Inc.*, 146 A.D.2d 89, 539 N.Y.S.2d 138 (3d Dep't 1989) (applying Pennsylvania Workers' Compensation law where plaintiff, a New York resident and employee of New York corporation, was injured at a work site in Pennsylvania, applied for and received Pennsylvania workers' compensation insurance); Restatement (Second) of Conflict of Laws § 183, comment c (2002) ("For a State . . . to subject a person who has been held liable in workmen's compensation to further unlimited liability in tort or wrongful death would frustrate the workmen's compensation policy of the State in which the award was rendered."); *Carnley v. Aid to Hospitals, Inc.*, 975 F.Supp. 252 (W.D.N.Y.1997) (displacing site of injury rule and holding that Texas Workers' Compensation law applied to a third-party action for indemnification brought by a New York property owner against a Texas employer of a Texas employee injured while working in New York).[9]

9. Leprino also moved, in the alternative, for summary judgment on the ground that it never agreed in writing to indemnify Columbia and because Columbia allegedly waived its right to seek indemnity or contribution. Although the Court need not reach either issue because I have granted Leprino's motion to dismiss, I find neither of Leprino's alternative arguments persuasive. Leprino misconstrues Workers' Compensation Law § 11. The exclusivity provision found Section 11 is subject to exceptions. First, where an action for in-

## CONCLUSION

For the foregoing reasons, Leprino's motion to dismiss the third-party complaint (Dkt.# 18) is granted.

IT IS SO ORDERED.

demnification or contribution is based on an express written contract between the employer and a third party, Section 11 does not bar that action. Another exception is the grave injury exception at issue here. Both exceptions are set forth in two different undesignated paragraphs in Section 11. Leprino, in effect, merges these exceptions into one, arguing that both a grave injury and an express agreement are required to maintain a third-party action. That is incorrect. Section 11 does not require that an employer expressly agree in writing to indemnify a third party in order to maintain an action under the grave injury exception. So long as an employee's injuries are grave, Section 11 authorizes the third-party action, irrespective of the existence of a writing. *See* N.Y. Workers' Compensation Law § 11.

In addition, Leprino's motion for summary judgment based on Columbia's alleged waiver is not supported by the evidence. There is insufficient evidence before the Court that Columbia agreed in writing to waive its right to contribution or indemnification from Leprino. Neither of the two contracts submitted by Leprino contains a clear and unambiguous waiver by Columbia to seek indemnification and contribution from Lerpino. In any event, the April 24, 1997 Agreement was cancelled by Leprino and never performed. Dkt. # 26, Asai Aff. ¶ 7. Further, the April 24, 1995 Service Agreement applies only to services Columbia provided to Leprino related to moving the palletizer from one plant location to another. While this agreement contains a waiver related to contribution, Leprino has submitted no evidence that this action relates to the services rendered by Columbia pursuant to that contract.