■ TRACI BUTLER, Appellant, v STAGECOACH GROUP, PLC, et al., Respondents, et al., Defendants. (Appeal No. 1.) [900 NYS2d 541]—

Appeal from an order of the Supreme Court, Livingston County (Thomas M. Van Strydonck, J.), entered March 24, 2009 in a personal injury action. The order granted the motion of defendants Stagecoach Group, PLC, Coach USA, Inc., individually and doing business as Coach Canada, Inc., Trentway-Wagar, Inc., Erie Coach Lines Company, and Ryan A. Comfort and determined that the law of Ontario, Canada concerning noneconomic damages applies to this action.

It is hereby ordered that the order so appealed from is unanimously affirmed without costs.

Memorandum: These 12 consolidated appeals concern four separate but related actions seeking damages for injuries and/or wrongful death resulting from the collision of a tractor-trailer parked on the shoulder of Route 390 and a chartered bus transporting a young women's hockey team from Ontario, Canada. The bus was leased by defendant Erie Coach Lines Company (Erie Coach Lines) from defendant Trentway-Wagar, Inc. (Trentway-Wagar), and was operated by defendant Ryan A. Comfort (collectively, bus defendants).

Plaintiffs contend that Supreme Court erred in granting the motion of defendant Coach Canada, Inc. in appeal No. 12 and the motions of defendants Stagecoach Group, PLC and Coach USA, Inc., individually and doing business as Coach Canada, Inc., in appeal Nos. 7 through 9 (collectively, parent corporation defendants), seeking summary judgment dismissing the respective complaints against them. We note at the outset, in the interest of judicial economy, that those appeals taken by plaintiffs are moot in light of a settlement agreement between the parties entered into after the notices of appeal were filed. We may take judicial notice of events that occur after a notice of appeal is filed that render an appeal moot (*see generally Matter of Giovanni K.*, 62 AD3d 1242 [2009], *lv denied* 12 NY3d 715 [2009]). Pursuant to the terms of that agreement, the liability of the bus defendants for the accident was 90% and the liability of the defendants associated with the tractor-trailer (truck defendants) was 10%, while no liability was apportioned to the parent corporation defendants. We therefore dismiss appeal Nos. 7 through 9 and appeal No. 12 as moot.

In any event, plaintiffs' contention with respect to those appeals is without merit. Plaintiffs contend that they raised an issue of fact whether the parent corporation defendants exercised complete control over the bus defendants sufficient to pierce the corporate veil (*see Matter of Morris v New York State Dept. of Taxation & Fin.*, 82 NY2d 135, 140-142 [1993]), or whether the bus defendants merely acted as the agent of the parent corpora-

tion defendants in arranging the charter trip that is the subject of the actions (*see Hallock v State of New York*, 64 NY2d 224, 231 [1984]). We reject that contention. Indeed, plaintiffs submitted the deposition testimony of the president of Trentway-Wagar setting forth the corporate relationships between the bus defendants and the parent corporation defendants and establishing that the trip was arranged by Trentway-Wagar and Erie Coach Lines, without any participation on the part of the parent corporation defendants. The fact that Trentway-Wagar owns the trade name "Coach Canada," which was displayed on the bus involved in this matter, does not compel a different result.

We reject the further contention of plaintiffs in appeal Nos. 1 through 6 and appeal Nos. 10 and 11 that the court erred in determining that the law of Ontario, Canada concerning noneconomic damages is applicable. As a preliminary matter, we conclude that the court did not abuse its discretion by taking judicial notice of Ontario law regarding noneconomic damages despite the failure of defendants to raise the applicability of the law as an affirmative defense and to provide the substance of the law in their pleadings in accordance with CPLR 3016 (e). We agree with the Third Department that, because CPLR 4511 (b) permits the court to take judicial notice of the laws of foreign countries that are presented "prior to the presentation of any evidence at the trial," the court is not barred from doing so based on a party's failure to comply with the requirement in 3016 (e) that the substance of such laws shall be set forth in the pleading (*see Burns v Young*, 239 AD2d 727, 728 [1997]; *cf. Bank of N.Y. v Norilsk Nickel*, 14 AD3d 140, 148-149 [2004], *appeal dismissed* 4 NY3d 843 [2005], *lv dismissed* 4 NY3d 846 [2005]).

We reject plaintiffs' further contention in appeal Nos. 1 through 6 and appeal Nos. 10 and 11 that Ontario law limiting noneconomic damages is procedural rather than substantive in nature, and thus that New York law should apply. It is well established that the measure of damages is substantive (*see Davenport v Webb*, 11 NY2d 392, 393 [1962]), and we thus conclude that the court properly applied a conflict of laws analysis with respect to the law applicable to the issue of noneconomic damages. It is undisputed that there is an actual conflict of law issue inasmuch as Ontario law limits recovery for pain and suffering, while New York law does not (*see generally Matter of Allstate Ins. Co. [Stolarz—New Jersey Mfrs. Ins. Co.]*, 81 NY2d 219, 223 [1993]). The plaintiffs seek the application of New York law to the noneconomic damages, and the bus defendants and the truck defendants seek the application of Ontario law to those damages.

"In resolving this choice of law issue, the preferred analytical tool in tort cases is to apply interest analysis . . . Under that analysis, the law of the jurisdiction having the greatest interest in the litigation will be applied and . . . the facts or contacts which obtain significance in defining State interests are those which relate to the purpose of the particular law in conflict" (*Dorsey v Yantambwe*, 276 AD2d 108, 110 [2000], *lv denied* 96 NY2d 712 [2001] [internal quotation marks omitted]). Where, as here, the conflicting laws are loss-allocating, we apply the rules set forth by the Court of Appeals in *Neumeier v Kuehner* (31 NY2d 121, 128 [1972]; *see Cooney v Osgood Mach.*, 81 NY2d 66, 73-74 [1993]). The first *Neumeier* rule provides that, if the parties to the lawsuit share a common domicile, as do plaintiffs and the bus defendants, the law of their domicile applies (*see Cooney*, 81 NY2d at 74; *Schultz v Boy Scouts of Am.*, 65 NY2d 189, 199-200 [1985]). Where, however, the parties are domiciled in different jurisdictions, as are plaintiffs and the truck defendants, the law of the site of the tort shall apply unless "it can be shown that displacing that normally applicable rule will advance the relevant substantive law purposes without impairing the smooth working of the multi-state system or producing great uncertainty for litigants" (*Neumeier*, 31 NY2d at 128).

With respect to plaintiffs and the bus defendants, we conclude that the first *Neumeier* rule shall apply (*see Schultz*, 65 NY2d at 201; *Dorsey*, 276 AD2d at 111). As the Court of Appeals explained, by applying the law of the parties' common domicile, the risk of forum shopping is reduced; the charge that the "forum-locus is biased in favor of its own laws and in favor of rules permitting recovery" is rebutted; and "the concepts of mutuality and reciprocity support consistent application of the common-domicile law" (*Schultz*, 65 NY2d at 201). Moreover, "[t]he domiciliary jurisdiction, which has weighed the competing considerations underlying the loss allocation rule at issue, has the greater 'interest in enforcing the decisions of both parties to accept both the benefits and the burdens of identifying with that jurisdiction and to submit themselves to its authority' " (*Cooney*, 81 NY2d at 73). Indeed, the Supreme Court of Canada determined in a trilogy of cases that such awards are not compensatory in nature, and that it is appropriate to limit damages for nonpecuniary losses because of the social impact of very large awards (*see Andrews v Grand & Toy Alberta Ltd.*, [1978] 2 SCR 229; *Thornton v Prince George School Dist. No. 57*, [1978] 2 SCR 267; *Arnold v Teno*, [1978] 2 SCR 287).

With respect to the truck defendants, the third *Neumeier* rule applies inasmuch as the parties are domiciled in Ontario, Can-

ada and Pennsylvania. As noted above, no party seeks to have Pennsylvania law applied to this issue. We reject plaintiffs' contention that New York law should apply under this rule because it is the site of the tort, and because both plaintiffs and the truck defendants purposely traveled to New York for recreational and business purposes, respectively. Rather, we conclude that the exception to the general rule that the law of the forum wherein the tort occurred should apply because, under the circumstances presented here, "displacing that normally applicable rule will advance the relevant substantive law purposes without impairing the smooth working of the multi-state system or producing great uncertainty for litigants" (*Neumeier*, 31 NY2d at 128). We conclude that, while applying Ontario law "may not affirmatively advance the substantive law purposes of New York, it will not frustrate those interests because New York has no significant interest in applying its own law to this dispute" (*Schultz*, 65 NY2d at 201). Furthermore, because the parties have stipulated that the truck defendants are only 10% liable for the accident, those defendants may pay more for nonpecuniary damages if New York law is applied to them, than the bus defendants, who are 90% liable, would pay because the damages are capped by Ontario law. Thus, we conclude that applying New York law would "produc[e] great uncertainty for [the] litigants" (*Neumeier*, 31 NY2d at 128; *see Dorsey*, 276 AD2d at 111).

Finally, we conclude that plaintiffs failed to meet the "heavy burden" of establishing that the application of Ontario law violates the public policy of New York (*Schultz*, 65 NY2d at 202). The Court of Appeals stated that "resort to the public policy exception should be reserved for those foreign laws that are truly obnoxious" (*Cooney*, 81 NY2d at 79), and that is not the case here. Even assuming, arguendo, that the Ontario law limiting damages violates the public policy of this State, we nevertheless conclude that plaintiffs failed to "establish that there are enough important contacts between the parties, the occurrence and the New York forum to implicate our public policy and thus preclude enforcement of the foreign law" (*Schultz*, 65 NY2d at 202). As in *Schultz*, plaintiffs traveled to New York for a brief time for recreational purposes, and such limited contact is not sufficient to implicate the public policy of New York with respect to noneconomic damages (*see id.* at 201-202). Contrary to plaintiffs' contention, *Kilberg v Northeast Airlines* (9 NY2d 34 [1961]) does not compel a different result. In *Kilberg*, the Court of Appeals refused to apply Massachusetts law limiting pecuniary damages in a wrongful death action to the damages resulting from the death of a New York resident, who purchased

a plane ticket in New York and flew from New York to Massachusetts, where the plane crashed. The Court concluded there were sufficient contacts to invoke the public policy of New York, and that to apply the limitation on damages with respect to its own citizen would violate the public policy of this State (*see id.* at 40). Present—Scudder, P.J., Martoche, Green and Gorski, JJ.