John **CALTAGIRONE** and Brenda Greenblatt, Plaintiffs–Appellants,

v.

**NY COMMUNITY BANCORP, INC.,** Michael P. Puorro, Bernard A. Terlizzi, Pension Committee of New York Community Bank, John Does 1–30,

Richard 1–30 Does, Anthony E. Burke, Thomas R. Cangemi, James J. O'Donovan, Joanne Strucker, Robert Wann, Defendants–Appellees.

No. 06–5700–cv.

United States Court of Appeals, Second Circuit.

Dec. 20, 2007.

Edwin J. Mills, Stull, Stull & Brody, New York, NY, for Plaintiffs–Appellants.

Jonathan G. Rose, Katten Muchin Rosenman LLP, Washington, D.C., for Defendants–Appellees.

Present: RICHARD J. CARDAMONE, ROSEMARY S. POOLER, Circuit Judges, JOHN F. KEENAN,* District Judge.

* Honorable John F. Keenan, of the United States District Court for the Southern District of New York, sitting by designation.

## SUMMARY ORDER

Plaintiffs-appellants John Caltagirone and Brenda Greenblatt, as alleged participants in plans governed by the Employee Retirement Income Security Act ("ERISA") and administered by the defendants-appellees, appeal from two opinions and orders of the United States District Court for the Eastern District of New York (Wexler, *J.*), dated February 6, 2006 and October 24, 2006, denying their motion for class certification and dismissing their claims. We assume the parties' familiarity with the underlying facts, procedural history, and specification of appellate issues, which we refer to only as necessary to explain our decision to affirm.

In their amended complaint, Caltagirone and Greenblatt alleged that they were participants in an ERISA plan administered by the defendants and that they suffered losses due to fiduciary breaches committed by the defendants between December 31, 2002 and February 4, 2005 (the "Class Period"). Based on the complaint, the plaintiffs moved to certify a class consisting of all participants in "the Plan" who owned New York Community Bancorp ("NYCB") ERISA accounts containing NYCB stock. The principal allegations of fiduciary breaches were that the fiduciaries (a) failed to disclose to Plan participants the highly speculative and risky investment strategies of NYCB and (b) imprudently invested the Plan's assets in NYCB stock. The plaintiffs brought the action on behalf of the putative class pursuant to § 502(a)(2) & (3) of ERISA, codified at 29 U.S.C. § 1132(a)(2) & (3). After the plaintiffs brought a motion seeking class certification, the District Court, in two opinions, held that neither plaintiff was a "participant" in the ERISA plans with statutory standing to sue and granted the defendants' motion to dismiss under Fed.R.Civ.P. 12(b)(1). These are the rulings on appeal.

The rights of action that the plaintiffs seek to assert are available only to "participants, beneficiaries, or fiduciaries of an employee benefit plan." *Coan v. Kaufman,* 457 F.3d 250, 255 (2d Cir.2006); *see* 29 U.S.C. § 1132(a)(2) & (a)(3). ERISA defines a "participant" as "any employee or former employee of an employer ... who is or may become eligible to receive a benefit of any type from an employee benefit plan." 29 U.S.C. § 1002(7). The Supreme Court has explained that "[i]n order to establish that he or she 'may become eligible' for benefits, a claimant must have a colorable claim that (1) he or she will prevail in a suit for benefits, or that (2) eligibility requirements will be fulfilled in the future." *Firestone Tire and Rubber Co. v. Bruch,* 489 U.S. 101, 117–18, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989). The plaintiffs contend that they are "participants" because they have a colorable claim that they will prevail in a suit for benefits. When, as here, ERISA standing depends on whether the claimants have a "colorable claim" for benefits, the evaluation of ERISA standing is intertwined with an evaluation of the potential merits of the claims. *See Coan,* 457 F.3d at 256 & n. 3.

■ Caltagirone was terminated from his position at Roslyn Bank on the day of or the day before it merged with NYCB. The District Court found that Caltagirone was never an employee of NYCB and that he never became enrolled in any of the NYCB ERISA plans. The plaintiffs concede that he was never employed by NYCB but they argue that the documentary proofs before the district court demonstrated that Caltagirone was a participant in the NYCB Plan on the day of the merger, and that as a consequence of that merger his holdings of Roslyn Bancorp stock under that company's 401(k) plan were converted into NYCB stock. The plaintiffs do not indicate what these docu-

mentary proofs were, but their contention is belied by the explicit terms of Caltagirone's termination agreements and by the uncontroverted evidence indicating that only full-time employees of NYCB would be eligible to participate in the NYCB ERISA plans. Indeed, it is not clear that plaintiffs contest these facts. Rather, the plaintiffs appear to suggest that Caltagirone had standing to sue the administrators of the NYCB ERISA plans based solely on the fact that his stock in Roslyn Bancorp was converted into NYCB stock after the merger. But ERISA standing is not based on stock holdings; it is based on participation in an ERISA plan. There is simply no evidence that Caltagirone ever enrolled or participated in an ERISA plan administered by the NYCB defendants. Thus, he lacks standing to sue these defendants under ERISA.

■ Greenblatt's employment with NYCB terminated on June 6, 2002—six months prior to the beginning of the putative Class Period. NYCB had two relevant ERISA plans during the Class Period. First, there was a Savings Plan. The Savings Plan was a voluntary plan governed by a trust agreement and all of its assets were held in a trust fund that was administered by the Savings Plan trustee. Included among investment options offered to Savings Plan participants during the relevant time period was the option to purchase units in an NYCB company stock fund. However, as a participant in the Savings Plan, Greenblatt never chose the investment option to purchase NYCB shares and her Savings Plan account never included NYCB shares. Hence, because the crux of the complaint relating to the Savings Plan is that the fiduciaries failed to disclose the risks of the NYCB stock, Greenblatt, who never held NYCB stock under the Savings Plan, is not within the group she defines as injured as a result of the alleged fiduciary breaches. Second, and even more telling, when Greenblatt

left NYCB on June 6, 2002–six months *prior* to the beginning of the Class Period—her Savings Plan account terminated and she transferred her entire interest in the account into an Individual Retirement Account, administered by Washington Mutual Bank. Thus, in view of the fact that Greenblatt took a total distribution of her Savings Plan prior to the beginning of the Class Period, she has no colorable claim for damages resulting from breaches occurring during that period. Hence, she lacks standing to sue the administrators of the Savings Plan.

The second NYCB ERISA plan was an Employee Stock Ownership Plan ("ESOP"). Unlike her Savings Plan account, Greenblatt continued to hold her NYCB ESOP account after she left NYCB and through the end of the class period. The difficulty, however, is that the plaintiffs' theory of fiduciary breaches has no application to the actions of the ESOP administrators. The District Court found that participants in the ESOP, unlike those in the Savings Plan, cannot chose among a variety of investment options. They are, instead, granted shares of NYCB by virtue of their employment. Thus, the district court found that there exists no discretion to recommend any particular investment option under the ESOP or for ESOP administrators to invest in any stock other than NYCB stock. Thus, as the district court found, the failure-to-disclose and the imprudent-investment allegations have no possible application to the ESOP plan, because neither the administrators nor the participants had the power to choose their investments under this Plan. If there is a complaint against the ESOP along these lines, it is that the plan was badly designed because its holdings appear to have consisted entirely of NYCB stock. However, a participant cannot sue for fiduciary breaches relating solely to the design of an ERISA plan. *See, e.g., Hughes Aircraft Co. v. Jacobson,* 525 U.S. 432, 443–44, 119

S.Ct. 755, 142 L.Ed.2d 881 (1999) (holding that "an employer's decision to amend a pension plan concerns the composition or design of the plan itself and does not implicate the employer's fiduciary duties"). Thus, Greenblatt does not have a colorable claim for benefits relating to her ESOP account.

The plaintiffs do not appear to contest this description of the ESOP. Rather, they contend that the ESOP was a "component of the Plan itself." It is not explained how this contention, if true, would support any of their theories of recovery. The issue is not important, however, because the plans were clearly separate plans. The plaintiffs note that a governing document defined "the Plan" as the New York Community Bank Employee Savings Plan and defined the New York Community Bank Employee Stock Ownership Plan as a "portion of the Plan." The plaintiffs and defendants offer differing interpretations of these definitions. The dispute is of no moment. The Savings Plan and the ESOP have separate trust documents and separate written plan documents; the plans file separate Forms 5500 with the IRS and the U.S. Department of Labor; the plans have different plan identification numbers. These distinctions clearly evidence an intention to create separate plans. *See, e.g., Chiles v. Ceridian Corp.,* 95 F.3d 1505, 1511 (10th Cir.1996) (concluding that there were separate plans when "[e]ach has a different ERISA identification number; the plans do not all share the same administrator or trust; and, most importantly, it is clear from the language of the plan documents that the company intended to establish four different plans").

The primary strategy of the plaintiffs' appeal is to analogize the District Court's opinions and orders to the line of cases that have held that an ERISA claim for breach of fiduciary duty may not be pursued by a former employee who has taken a full distribution of vested benefits prior to the commencement of the suit. The plaintiffs draw our attention to two recent cases that have held, to the contrary, that a former employee retains the standing to sue, even after taking a full distribution, provided that the received distribution was diminished by the alleged fiduciary breaches. *See Graden v. Conexant Systems Inc.,* 496 F.3d 291 (3rd Cir.2007); *Harzewski v. Guidant Corp.,* 489 F.3d 799, 803 (7th Cir. 2007). Although it is true that the plaintiffs had taken full distributions prior to the commencement of the suit, the District Court's dismissal, as described above, did not rest on this ground and the Third and Seventh Circuit cases cited are inapposite. The *Graden* and *Harzewski* Courts held that a former employee who has taken a full distribution prior to commencement retains standing to sue when it is alleged that the distribution she received was diminished because of fiduciary breaches that occurred during the time the employee was enrolled in the plan. There is no reason in law or logic to extend this principle to a situation where, as here, the participant took a total distribution prior to the alleged fiduciary breaches. Because these plaintiffs cannot show that they suffered any losses as a result of the alleged fiduciary breaches, neither plaintiff has a colorable claim for benefits with statutory standing to sue.

For the foregoing reasons, the orders of the District Court are AFFIRMED and all pending motions are denied as moot.