**Barbara A. BURNS et al., Plaintiffs,**

v.

**DELAWARE CHARTER GUARANTEE & TRUST COMPANY d/b/a Principal Trust Company, and Principal Financial Group, Inc., Defendants.**

No. 10 Civ. 4534.

United States District Court, S.D. New York.

June 8, 2011.

---

See, also, 788 F.Supp.2d 226, 2011 WL 2118754.

Dorfman Knoebel & Conway LLP, by: Burton Dorfman, Esq., Nyack, NY, for Plaintiffs.

Sidley Austin LLP, by: Lynn Ann Dummett, Esq., Joel S. Feldman, Esq., Kevin M. Fee, Esq., Michael C. Adolina, Esq., New York, NY, for Defendants.

## OPINION

SWEET, District Judge.

Defendants Principal Financial Group, Inc. ("Principal Financial") and Delaware Charter Guarantee & Trust Company d/b/a Principal Trust Company ("Principal Trust") (collectively, the "Defendants") have moved pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss the Amended Complaint [1] ("AC") filed by Plaintiffs Barbara Burns, James Burns, Daniel Mancuso, Kevin Romano, Robert Sheridan, Michelle Venema, Karen Mancu-

1. Plaintiffs erroneously refer to their first Amended Complaint as the Second Amended Complaint.

so, Joanne Romano, Michael Heaphy, and Suzanne Heaphy ("Plaintiffs"). Upon the conclusions set forth below, the motion is granted in part and denied in part.

The Plaintiffs and the Defendants entered into Self–Directed Individual Retirement Trust Agreements ("SIRTA" or "Trust Agreement") to establish traditional individual retirement accounts ("IRAs"). The Plaintiffs directed investment in the Westgate Fund which proved to be a Ponzi scheme operated by James Nicholson ("Nicholson"). At issue is the adequacy of the eight claims set forth in the AC, alleging breach of contract, negligence, gross negligence, breach of fiduciary duty, unjust enrichment, negligent misrepresentation, fraud, and aiding and abetting fraud.

## I. *Prior Proceedings*

This case was removed from New York State Supreme Court for Rockland County on June 9, 2010. The Plaintiffs filed their AC on July 21, 2010. The Defendants moved to dismiss the AC on August 31, 2010, and the motion to dismiss was heard and marked fully submitted on December 8, 2010. This court recently granted in part and denied in part a similar motion to dismiss in the related case of *Grund v. Delaware Charter Guarantee & Trust Co.*, No. 09 Civ. 8025, 788 F.Supp.2d 226, 2011 WL 2118754 (S.D.N.Y. May 26, 2011).

According to the AC, the Plaintiffs entered into a standardized form contract for a self-directed IRA that was drafted by Defendants, which in turn was copied in part from a federal form contract created by the Internal Revenue Service ("IRS"). *See* IRS Form 5305A; AC ¶¶ 62, 64, 67, 92, 94, 123, 125. The form, as promulgated by the IRS, sets forth a number of provisions which must be included to create a valid "Traditional Individual Retirement Custodial Account" under § 408 of the Internal Revenue Code ("IRC"). Under IRC § 408, the custodian/trustee has a duty to acquire and hold particular investments; to keep custody of investments; to refrain from commingling the investments of each account with any other property; to deposit assets of accounts requiring safekeeping in an adequate vault; to determine the assets held by it in trust and the value of such assets at least once in each calendar year and no more than 18 months after the preceding valuation; and to receive, issue receipts for, and safely keep securities. *See* Treas. Reg. 1.408–2(e). The SIRTA, written by Defendants, was signed by Plaintiffs, AC ¶¶ 64, 94, 125.

According to the AC, while Defendants were collecting fees from Plaintiffs for services which they allegedly failed to perform, they were allegedly permitting an unauthorized person, Nicholson, to take a percentage of the retirement money belonging to Plaintiffs. AC ¶¶ 32, 36, 40, 47. Plaintiffs believed that Defendants were upholding their contractual obligations, adhering to their duties as custodians/trustees, and protecting Plaintiffs' retirement money, and Defendants are alleged to have negligently or intentionally failed to perform many of their contractual and fiduciary obligations, as well as provided false information to Plaintiffs and aided Nicholson's fraud. AC ¶¶ 32, 36, 38–46.

Defendants are alleged to have willfully avoided uncovering Nicholson's scheme because they were benefitting from substantial fees gained though their relationship with him and Westgate. AC ¶¶ 40, 41, 44, 45.

According to the AC, Plaintiffs trusted Defendants to perform their duties as trustees/custodians of their IRA accounts but, instead of performing them, Defendants delegated much of the control over the IRA accounts to Nicholson and were willfully blind to the consequences of that action. This delegation was undertaken

despite Nicholson's background and the fact that he was not an eligible party to any of the necessary IRA contracts required by federal law for the management of IRA and pension funds. Although they were in a unique position as a large, established IRA custodian and trustee, Defendants allegedly failed to discover Nicholson's fraud, failed in their duties as trustees, provided false statements to their clients, and breached their contractual duties.

## II. *The Applicable Standard*

Fed.R.Civ.P. 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief."

■■■ Therefore, to survive a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). Though the court must accept the factual allegations of a complaint as true, it is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 129 S.Ct. at 1949 (quoting *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955). Plaintiffs must allege sufficient facts to "nudge [ ] their claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570, 127 S.Ct. 1955.

## III. *Principal Financial is Not Dismissed*

■■ The Defendants have urged that the AC contains no allegations that Principal Financial was involved in the transactions at issue. (Def. Mem. in Supp. at 8). Plaintiffs seek to meet this contention by citing authorities relating to alter ego status and fraud, but Plaintiffs fail to adequately allege either of these conditions in the AC.

However, under 26 C.F.R. § 1.408–2(e)(5)(i)(A)(1), if that section has been incorporated into the contract as alleged, "the owner or directors of the applicant will be responsible for the proper exercise of fiduciary powers by the applicant." This responsibility of Principal Financial is sufficient to defeat the Defendants' motion with respect to Principal Financial.[2]

## IV. *Plaintiffs' New Allegations Regarding a Lack of a Contract Are Rejected*

The AC alleged that Plaintiffs entered into a "trust agreement" with Principal Trust and that all Plaintiffs entered into this same "form contract." AC ¶¶ 62, 64, 67, 92, 94, 123, 125. Plaintiffs quoted from the contract in the AC (AC ¶¶ 95, 126), and it formed the basis for their breach of contract claim (AC ¶¶ 91–105). Defendants attached to their motion to dismiss the contracts in force and governing Plaintiffs' accounts during the relevant time period, all of which contained identical terms, identifying them as the "Trust Agreement." The same contract has been incorporated into the pleadings without dispute in the parallel *Grund* case. Plaintiffs' Response does not appear to contest that the Trust Agreement is the document quoted in the AC and appears to accept that the Trust Agreement's terms governed Plaintiffs' relationship with Principal Trust. The Response also quotes from the Trust Agreement when describing Princi-

2. Defendants have brought the order dismissing claims in *Mandelbaum v. Fiserv, Inc.*, 09 Civ. 752, 787 F.Supp.2d 1226, 1239–44, 2011 WL 1225549, at *9–12 (Mar. 29, 2011), to the Court's attention, in which claims against the parent company were dismissed. However, the *Mandelbaum* opinion does not consider 26 C.F.R. § 1.408–2(e)(5)(i)(A)(1).

pal Trust's contractual duties. Pl. Response at 12–14, 22. Plaintiffs still refer to the Trust Agreement as containing the terms underlying their breach of contract claim. *Id.* at 12–13.

At various points in the Response, however, Plaintiffs challenge their own allegations of a uniform trust agreement, suggesting that there was no uniform trust agreement at all. Plaintiffs claim that they received only an "application," "disclosure form," various transfer documents, IRS documents, (Pl. Response at 2), and a "letter of understanding" from Principal Trust, and that they never received the SIRTA referenced and quoted in their complaint. *Id.* at 12. To support these contentions, the Response attaches affidavits from each individual plaintiff, as well as varying sets of what appear to be IRA-related documents in each plaintiff's possession. The Response does not claim that the newly referenced documents contain the alleged contractual terms upon which Plaintiffs base the AC'S breach of contract allegations. *See* AC ¶¶ 32, 44, 59, 75, 81. Plaintiffs do not attach or identify any new trust agreement that they claim governs their IRAs.

Plaintiffs' new factual allegations, which contradict the AC'S allegation that all plaintiffs signed a form "trust agreement" governing their IRAs, are rejected. *Compare* AC ¶¶ 62, 67, 91–105. Plaintiffs cannot use their briefs to disavow the allegations in their complaint. *Shervington v. Village of Piermont*, No. 09 Civ. 4273, 2010 WL 93158, at *6 (S.D.N.Y. Jan. 8, 2010) withdrawn in part on other grounds in 732 F.Supp.2d 423 (S.D.N.Y.2010) (citations omitted); *G–I Holdings, Inc. v. Baron & Budd*, 179 F.Supp.2d 233, 265–66 (S.D.N.Y.2001) (Sweet, J.) ("It is inconsistent with the standards for resolving a motion to dismiss to have this Court draw

inferences from facts not pleaded in the Complaint.").

Defendants contend that Plaintiffs' refusal to recognize the contract governing their relationship with Defendants and forming the basis for their breach of contract claim merits dismissal of that claim. While this invitation is tempting, for the sake of efficiency the breach of contract claims will be evaluated as alleged in the AC.

## V. *The Federal Breach of Fiduciary Duty Claims are Dismissed*

### a. IRC Section 408 Does Not Give Rise to Actionable Duties

■ The AC bases its breach of fiduciary duty claim exclusively on allegations that Defendants violated "federal" duties rooted in Section 408 of the Internal Revenue Code ("IRC") and regulations thereunder. *See* AC ¶¶ 55, 57. However, as explained in *Grund,* Section 408 does not give rise to any independent cause of action or actionable duties, and any claim that it does is "frivolous." *Sirna v. Prudential Secs., Inc.,* No. 95 Civ. 8422, 95 Civ. 9016, 96 Civ. 4534, 1997 WL 53194, at *2 (S.D.N.Y. Feb. 10, 1997). Therefore, Plaintiffs' breach of fiduciary duty claim fails as a matter of law.

Although § 408 sets forth a series of statutory guidelines for IRAs seeking tax-deferred status, *see* 26 U.S.C. § 408, the Honorable Lewis Kaplan in a well-reasoned opinion recognized the limited scope of § 408: "Section 408 of the Code does no more than establish a framework whereby individuals may obtain favorable tax treatment . . . ." *Sirna,* 1997 WL 53194, at *3 (involving the alleged failure of an IRA trustee to properly manage beneficiary funds). Judge Kaplan dismissed as "frivolous" the plaintiff's argument that an IRA trustee's alleged failure properly to man-

age an account somehow "violated" § 408's tax deferral protocol:

> [T]here is nothing in the wording or effect of the statute to suggest that Congress intended to create, via the tax code, a private right of action against errant fiduciaries. When Congress did intend to create such private rights of action, it did so unambiguously, as in Title I of ERISA. Furthermore, actions for breach of fiduciary duty are traditionally matters of state law.

1997 WL 53194, at *3. He held that "there is no implied cause of action against allegedly errant IRA fiduciaries under Section 408 of the Internal Revenue Code." *Id. See also Reynolds v. de Silva*, No. 09 Civ. 9218, 2010 WL 743510, at *7 (S.D.N.Y. Feb. 24, 2010) ("there is no private right of action for violations of the IRC"); *Hines v. FiServ, Inc.*, No. 08 Civ. 2569, 2010 WL 1249838, at *2 (M.D.Fla. Mar. 25, 2010). The conclusions reached in *Sirna* are equally applicable here.

### b. Plaintiffs' ERISA Claims are Dismissed for Lack of Standing and Failure to State a Claim

At paragraph 55, the AC also cites ERISA as a basis for Plaintiffs' breach of fiduciary duty claims. To the extent Plaintiffs make a claim under ERISA, it also fails.

■ If Plaintiffs could state a claim under ERISA, all of their other claims would be preempted. Section 514(a) of ERISA states that ERISA "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) of this title and not exempt under section 1003(b) of this title." 29 U.S.C. § 1144(a). The term "State law" includes not only "all laws, decisions, rules, regulations, or other State action having the effect of law," 29 U.S.C. § 1144(c)(1), but also state law

breach of contract and tort claims involving an ERISA plan. *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 52–57, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987).

■ Only plaintiffs who are properly considered "participants" or "beneficiaries" (or "fiduciaries") of an employee benefit plan have standing to sue under ERISA. *See Caltagirone v. N.Y. Cmty. Bancorp, Inc.*, 257 Fed.Appx. 470, 472 (2d Cir.2007); *Central States Se. & Sw. Areas Health & Welfare Fund v. Merck–Medco Managed Care, LLC*, 433 F.3d 181, 200–01 (2d Cir.2005); *DaPonte v. Manfredi Motors, Inc.*, 157 Fed.Appx. 328, 331 (2d Cir. 2005) (quoting *Aetna Health Inc. v. Davila*, 542 U.S. 200, 210, 124 S.Ct. 2488, 159 L.Ed.2d 312 (2004)). Therefore, Plaintiffs must properly allege facts establishing that they are ERISA "participants" or "beneficiaries" in order to survive a motion to dismiss. *See O'Shea v. Littleton*, 414 U.S. 488, 494, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974) ("if none of the named plaintiffs purporting to represent a class establishes the requisite of a case or controversy with the defendants, none may seek relief on behalf of himself or any other members of the class.") (citations omitted). The AC does not allege an ERISA "employee benefit plan," or that any of the Plaintiffs are "participants" in, or "beneficiaries" of, any such plan. Accordingly, Plaintiffs lack standing to sue under ERISA. *Caltagirone*, 257 Fed.Appx. at 473; *Teagardener v. Republic–Franklin Inc. Pension Plan*, 909 F.2d 947, 951–54 (6th Cir.1990) (affirming dismissal of ERISA claim for lack of standing).

■ Moreover, IRA accounts like those Plaintiffs held are explicitly carved out of the scope of ERISA. *See* 29 U.S.C. § 1051(6) (exempting from coverage under Title I of ERISA "an [IRA] or annuity described in section 408 of [the Code]"); 29 C.F.R. § 2510.3–2(d)(1) ("For purposes

of title I of [ERISA], the terms 'employee pension benefit plan' and 'pension plan' shall not include an [IRA] described in section 408(a) of the Code.") Courts have repeatedly held that ERISA does not apply to IRAs. *See, e.g., Rose v. The Long Island R.R. Pension Plan,* 828 F.2d 910, 913 (2d Cir.1987); *Charles Schwab & Co. v. Debickero,* 593 F.3d 916, 919 (9th Cir. 2010) ("IRAs are specifically excluded from ERISA's coverage" because IRAs involved "no employer oversight, no ongoing employer commitment, nor any potential for employer abuse").

Plaintiffs have not alleged that there is any ERISA-covered employee benefit plan at issue, or that any named plaintiff was the beneficiary of such a plan. Therefore, Plaintiffs have failed to establish their standing under ERISA.

Plaintiffs also have not established any ERISA rights. It would appear that Plaintiffs seek to establish a private right of action under ERISA.

Title I of ERISA sets forth "rules for reporting and disclosure, vesting, participation, funding, fiduciary conduct, and civil enforcement" relating to "employee benefit plans,"[3] and explicitly carves out IRAs. Title II of "ERISA" consists of various amendments made to the Internal Revenue Code at the time of ERISA's passage, including § 408's provision of IRA guidelines. *See* 26 U.S.C. § 401 *et seq.;* 26 U.S.C. § 408. Title II does not give rise to an enforceable fiduciary duty claim, and, although technically part of the "ERISA statute," Title II is not generally what courts refer to when describing "ERISA claims." *See, e.g., Metz v. Indep. Trust Corp.,* 994 F.2d 395, 399–400 (7th Cir.1993) ("[Plaintiff's] IRA is not even governed by ERISA"); *In re Houck,* 181 B.R. 187, 191–92 (Bankr.E.D.Pa.1995) ("IRAs are tax qualified ... but they are not subject to ERISA"). To the extent they are alleged, the ERISA claims are dismissed for lack of standing and failure to state a claim.

Plaintiffs contend that they add claims for breach of fiduciary duty under the common law, citing AC paragraph 98. That paragraph, which is found under the heading of Plaintiffs' breach of contract claim, states plainly; "Defendants failed to perform there [sic] common law duties, the federal fiduciary standards, the common law fiduciary standards and the terms of the trust agreements." AC ¶ 98. Plaintiffs make such boilerplate allegations again at paragraphs 107 (discussing their negligence claims) and 132 (discussing their negligent misrepresentation claims). Common law claims are never mentioned in the general allegations of the complaint or those allegations pertaining to Plaintiffs' breach of fiduciary duty claims, nor are they incorporated by reference. Rather, as noted above, Plaintiffs rely on Section 408, regulations promulgated under that section, and ERISA. AC ¶¶ 54, 55, 58. Plaintiffs' various references to fiduciary duties throughout the AC appear to refer to these federal duties (which overlap with their contractual duties). Plaintiffs' vague references among paragraphs discussing other claims are insufficient to

---

**3.** "Employee benefit plan" is defined under ERISA as "an employee welfare benefit plan or an employee pension benefit plan or a plan which is both an employee welfare benefit plan and an employee pension benefit plan." 29 U.S.C. § 1002(3). A "participant" includes "any employee or former employee of an employer, or any member or former member of an employee organization, who is or may become eligible to receive a benefit of any type from an employee benefit plan which covers employees of such employer or members of such organization, or whose beneficiaries may be eligible to receive any such benefit." 29 U.S.C. § 1002(7). Plaintiffs do not fall within this umbrella.

state a plausible claim for common law breach of fiduciary duty. *Iqbal,* 129 S.Ct. at 1949 (quoting *Twombly,* 550 U.S. at 570, 127 S.Ct. 1955).

## VI. *Plaintiffs' State Law Claims are Dismissed in Part and Survive in Part*

### a. Delaware Law Applies to the Contract Claims While New York and New Jersey Law Apply to the Tort Claims

 A federal district court applies the choice-of-law rules of the State in which it sits. *Klaxon v. Stentor Electric Mfg. Co.,* 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). In New York, "[i]t is well settled that courts will enforce a choice of law clause so long as the chosen law bears a reasonable relationship to the parties or the transaction." *Lupien v. Lupien,* 68 A.D.3d 1807, 891 N.Y.S.2d 785, 785–86 (4th Dept.2009) (internal citations and quotation marks omitted). The SIRTA governing the parties' relationship contains a choice of law provision that states: "This Trust Agreement is made pursuant to and shall be construed in accordance with the laws of the State of Delaware." SIRTA § 5.8(K). As Plaintiffs allege, Delaware Charter Guarantee & Trust Company is organized under the laws of Delaware with its principal place of business in Wilmington, Delaware. As a result, this Court will enforce the Trust Agreement's choice of law clause and apply Delaware law with respect to Plaintiffs' breach of contract claims.

 Under New York choice of law rules, tort claims are outside the scope of contractual choice of law provisions. *Plymack v. Copley Pharm., Inc.,* No. 93 Civ. 2655, 1995 WL 606272, at *5 (S.D.N.Y. Oct. 12, 1995) (Under New York law, "[a] contractual choice-of-law provision . . . does not bind the parties with respect to

non-contractual causes of action.") (citing *Fustok v. Conticommodity Servs., Inc.,* 618 F.Supp. 1082, 1089 (S.D.N.Y.1985)). To determine which law applies in a tort action, New York courts apply an "interest analysis," under which the law of the jurisdiction with the greatest interest in the litigation applies. *AroChem Int'l, Inc. v. Buirkle,* 968 F.2d 266, 270 (2d Cir.1992) (citing *Schultz v. Boy Scouts of America, Inc.,* 65 N.Y.2d 189, 197, 491 N.Y.S.2d 90, 480 N.E.2d 679 (1985)); *see also Babcock v. Jackson,* 12 N.Y.2d 473, 481–82, 240 N.Y.S.2d 743, 191 N.E.2d 279 (1963). "Two separate inquiries are . . . required to determine the greater interest: (1) what are the significant contacts and in which jurisdiction are they located; and, (2) whether the purpose of the law is to regulate conduct or allocate loss." *Padula v. Lilarn Properties Corp.,* 84 N.Y.2d 519, 521, 620 N.Y.S.2d 310, 644 N.E.2d 1001 (1994) (citing *Schultz,* 65 N.Y.2d at 198, 491 N.Y.S.2d 90, 480 N.E.2d 679). Where the laws alleged to be in conflict are conduct-regulating, "the law of the jurisdiction where the tort occurred will generally apply because that jurisdiction has the greatest interest in regulating behavior within its borders." *Cooney v. Osgood Mach.,* 81 N.Y.2d 66, 72, 595 N.Y.S.2d 919, 612 N.E.2d 277 (1993); *see also Ackerman v. Price Waterhouse,* 252 A.D.2d 179, 683 N.Y.S.2d 179, 189 (1st Dept.1998) (quoting *Cooney,* 81 N.Y.2d at 72, 595 N.Y.S.2d 919, 612 N.E.2d 277); *In re New York City Asbestos Litigation,* 32 Misc.3d 161, 168–69, 921 N.Y.S.2d 466 (N.Y.Sup.2011) (quoting *Cooney,* 81 N.Y.2d at 72, 595 N.Y.S.2d 919, 612 N.E.2d 277). "With respect to tort claims, this is usually the state where the tort took place." *In re Currency Conversion Fee Antitrust Litig.,* 230 F.R.D. 303, 311 (S.D.N.Y.2004). In cases such as this, the locus of the tort tends to be where the alleged victims resided, as that is the

locus of their economic loss. *Id. See also Bon Jour Group, Ltd. v. Elan–Polo, Inc.,* No. 96 Civ. 6705, 1997 WL 401814, at *4 (S.D.N.Y. July 16, 1997) ("where the location of the alleged tort is not apparent, the tort is deemed to occur where the party resides and sustained an economic loss resulting from the tort") (citation omitted). On the other hand, where the conflicting laws are loss-allocating, "other factors are taken into consideration, chiefly the parties' domiciles." *New York City Asbestos Litigation,* 32 Misc.3d at 169, 921 N.Y.S.2d 466 (quoting *Cooney,* 81 N.Y.2d at 72, 595 N.Y.S.2d 919, 612 N.E.2d 277).

■■■ Here, Plaintiffs allege that Defendants breached their duties of care, committed and aided fraud, and were otherwise negligent or intentionally inadequate in fulfilling their obligations to Plaintiffs. These alleged legal duties are conduct-regulating. In terms of contacts, Defendants are Delaware corporations with their primary places of business in Delaware and Iowa. Plaintiffs resided in New York and New Jersey when injured. The parties agree that the Court should apply the laws of these two jurisdictions, as they represent the locus of the harm.

### b. The Motion to Dismiss the Contract Claims is Granted in Part and Denied in Part

Throughout the AC, Plaintiffs allege that Defendants breached various duties under the SIRTA: (1) "Defendants had an implied obligation to preserve and maintain the trust funds, including but limited [sic] exercising due diligence to determine where the IRA funds were maintained and that these funds were not commingled by Nicholson, Westgate and the Westgate entities" (AC ¶ 96); (2) "Defendants wholly failed and consciously avoided an administrative review of the investment offering materials that would have provided an in-

dicator of a fraud and at the very least cause Defendant to audit the books of Nicholson, Westgate and Westgate Affiliates" (AC ¶ 43); (3) Defendants failed to provide Plaintiffs with annual reports of all transactions related to the IRA as set forth in the IRS Opinion Letter included in the application booklet (AC ¶ 102); (4) Defendants failed to "to protect and preserve the funds received from Plaintiff" (AC ¶ 65); (5) Defendants' failed to provide accurate annual statements to Plaintiffs regarding the annual profit or loss in their accounts (AC ¶ 68); (6) Defendants failed to provide accurate statements of the account activity in Plaintiffs' accounts at Westgate (AC ¶ 70); (7) Defendants failed to "determine the trust funds [sic] existence and that the funds were not commingled" (AC ¶¶ 97, 98, 101); and (8) Defendants did not review the Westgate reports and verify information provided by Westgate (AC ¶¶ 76, 99, 100).

The Trust Agreement itself charges Principal Trust with three main duties: (1) to accept contributions and make investments "in accordance with the instructions of the Account Holder," including "through the facilities of [a] Brokerage Firm" selected by the Account Holder (Trust Agreement ¶¶ 5.1(E), 5.5(G)); (2) to make distributions out of the IRA account "on the written directions of the Account Holder" (Trust Agreement ¶ 5.3(A)); and (3) to perform limited administrative services with respect to the accounts, including rendering accountings (including through information supplied in broker-dealer statements) (Trust Agreement ¶ 5.5(N)).

Defendants contend that they have complied with all of their contractual obligations. However, such claims lead to factual disputes which, along with the interpretation of ambiguous contract provisions, are inappropriate for resolution on a motion to dismiss, where allegations are

taken as true and read in a light most favorable to plaintiffs. *See In re Morgan Stanley ERISA Litig.*, 696 F.Supp.2d 345, 353 (S.D.N.Y.2009).

For the most part, Plaintiffs do not cite to specific provisions of the Trust Agreement which have allegedly been breached, leaving the Court to surmise as to what contract terms are actually at issue.

■■■ With regard to breach of contract allegations (1), (2), (4), and (7) listed above (involving a duty to protect and prevent the commingling of funds and conduct an administrative review), SIRTA § 5.5(P) provides that "[t]he Trustee shall be under no duty to ... review or monitor any securities or other property held in Trust." Plaintiffs do not cite any contractually-required administrative review or investigation of Westgate in order to prevent the commingling of funds. IRC § 408(a)(5) and 26 C.F.R. § 1.408–2(b)(5)(i) prevent the commingling of IRA funds, but even if it is assumed that such a duty is read into the SIRTA by its stated purpose ("to establish a Traditional IRA under Internal Revenue Code ("Code") Section 408(a)"), Plaintiffs have not established that Defendants actually commingled their funds or should be liable for commingling done by Westgate. *See Metz v. Indep. Trust Corp.*, 994 F.2d 395, 402 (7th Cir.1993) (IRA trustees such as Principal Trust cannot be held liable for a third party's alleged breaches of trust). Therefore, Plaintiffs' breach of contract allegations regarding administrative review, the duty to investigate, and commingling of funds are dismissed.

■■■ With regard to breach of contract allegations (3), (5), (6), and (8) listed above (involving the provision of account reports), SIRTA § 5.5(N) provides as follows:

Within ninety (90) days from the close of each Trust Year, the Trustee shall ren-

der an accounting, valuing the assets at fair market value, to the Account Holder. The accounting may consist of copies of regularly issued broker-dealer statements to the Trustee and copies of mutual fund, insurance company, and other investment summary account statements supplied to the Trustee. The Account Holder must file any exceptions or objections to the accounting with the Trustee in writing, within sixty (60) days of the mailing of such accounting. In the absence of such filing, the Account Holder shall be deemed to have approved such account; and in such case, or upon the written approval of the Account Holder of any such account, the Trustee shall be released, relieved and discharged with respect to all matters and things set forth in such account as though such account had been settled by the decree of a court of competent jurisdiction. No person other than the Account Holder may require an accounting or bring any action against the Trustee with respect to the Trust or its actions as Trustee.

The AC alleges that Defendants provided inaccurate reports which they should have verified. SIRTA § 5.5(N) makes clear that Plaintiffs had no obligation to independently formulate the statements they sent to Plaintiffs. However, the SIRTA does not clearly excuse Defendants for supplying inaccurate statements or failing to verify their contents before passing them along to Plaintiffs, especially where, as alleged, Defendants knew or should have known that Westgate's statements were falsified.

Defendants contend that the SIRTA's exculpatory language immunizes them from Plaintiffs' breach of contract claims. However, the exculpatory language in the agreement does not clearly apply to Plaintiffs' claims regarding annual reports.

Therefore, these breach of contract claims survive the exculpatory language at this stage. Furthermore, the SIRTA itself acknowledges in § 5.8(B) that the trustee may be liable for intentional misconduct or negligence, both of which are alleged with regard to Defendants' breaches of the SIRTA.

Plaintiffs' breach of contract claims also appear to be based in part on various "letters" Principal Trust allegedly sent to Plaintiffs. AC ¶¶ 51, 52, 59, 60, 61, 102. However, Plaintiffs never actually allege that these letters constituted contracts. By and large, the letters are alleged to promise nothing more than that Defendants will follow through on their duties as trustees under the SIRTA, though Plaintiffs allege that Defendants failed to provide Plaintiffs with reports of all transactions related to the IRA based on an "IRS letter in Application Booklet." AC ¶¶ 60, 102. Plaintiffs have sufficiently identified the letters at issue but have not sufficiently alleged that they constitute agreements between the parties which Defendants then breached. As such, these claims are dismissed.

### c. The Economic Loss Doctrine Does Not Bar Plaintiffs' Negligence Claims

Defendants contend that the economic loss rule bars all of Plaintiffs' tort claims. (Def. Mem. in Supp. at 18–19).

 Where plaintiffs allege primarily economic loss as an injury in a tort claim, " 'the usual means of redress is an action for breach of contract; a tort action for economic loss will not lie.' " *In re Adelphia Communications Corp.*, No. 02–41729, 2007 WL 2403553, at *9 (Bankr.S.D.N.Y. Aug. 17, 2007) (citation omitted); *Dean v. Barrett Homes, Inc.*, 968 A.2d 192, 202, 406 N.J.Super. 453 (N.J.Super.Ct.App.Div.2009) (describing standards

similar for motion to dismiss purposes). The purpose of the rule is:

> [T]o keep contract law from drown[ing] in a sea of tort ... [and with this goal in mind] New York courts restrict plaintiffs who have suffered economic loss, but not personal or property injury, to an action for the benefits of their bargains. Thus, [i]f the damages suffered are of a type remediable in contract, a plaintiff may not recover in tort.

*Manhattan Motorcars, Inc. v. Automobili Lamborghini, S.p.A.*, 244 F.R.D. 204, 220 (S.D.N.Y.2007) (quotation marks and citations omitted). *See also Dean*, 968 A.2d at 202. "Moreover, by preventing the encroachment of tort law into the domain of contract, the economic loss doctrine protects parties' abilities to allocate risk by mutual agreement and thereby form reliable expectations about their potential financial exposure with respect to the duties and liabilities that they have contractually assumed." *Travelers Cas. and Sur. Co. v. Dormitory Authority—State of New York*, 734 F.Supp.2d 368, 379 (S.D.N.Y.2010). *See also Alloway v. General Marine Indus. L.P.*, 149 N.J. 620, 628, 695 A.2d 264 (N.J.1997) (economic loss doctrine allows parties to allocate risk).

As stated by the New York Court of Appeals,

> [A] defendant may be liable in tort when it has breached a duty of reasonable care distinct from its contractual obligations, or when it has engaged in tortious conduct separate and apart from its failure to fulfill its contractual obligations. The very nature of a contractual obligation, and the public interest in seeing it performed with reasonable care, may give rise to a duty of reasonable care in performance of the contract obligations, and the breach of that independent duty will give rise to a tort claim. Where a party has fraudulently

induced the plaintiff to enter into a contract, it may be liable in tort, or where a party engages in conduct outside the contract but intended to defeat the contract, its extraneous conduct may support an independent tort claim. Conversely, where a party is merely seeking to enforce its bargain, a tort claim will not lie. *New York Univ. v. Continental Ins. Co.*, 87 N.Y.2d 308, 316, 639 N.Y.S.2d 283, 662 N.E.2d 763 (N.Y.1995).

■ Significantly, the SIRTA explicitly carves out claims of negligence and intentional conduct from its coverage. Section 5.8(B) provides that "[t]he Trustee shall not be liable for any act or omission made in connection with the Trust except for its intentional misconduct or negligence." Plaintiffs' tort claims based in negligence and intentional misconduct thus seek to enforce duties outside of the contract and cannot be precluded by Plaintiffs' contract claims.

As noted above, the purpose of the economic loss doctrine is to allow parties to allocate risk. In light of SIRTA § 5.8(B), it would be improper to apply the economic loss doctrine to dismiss Plaintiffs' tort claims.

### d. Plaintiffs Adequately Plead Their Negligence and Gross Negligence Claims

■ To establish a prima facie case of negligence, a plaintiff must establish "(1) a duty of care owed to plaintiff by defendant, (2) a breach of that duty by defendant, (3) proximate cause, and (4) actual damages." *Brunson v. Affinity Fed. Cred. Union*, 199 N.J. 381, 400, 972 A.2d 1112 (2009). *See also Jiminez v. Shahid*, 83 A.D.3d 900, 900–01, 922 N.Y.S.2d 123 (2d Dept.2011) (same). A "gross negligence" claim requires a further showing of "reckless disregard for the rights of others, bordering

on intentional wrongdoing." *Cowsert v. Macy's East, Inc.*, 74 A.D.3d 1444, 904 N.Y.S.2d 239, 240 (3d Dept.2010) (citations omitted); *see also Lehigh Valley R.R. Co. v. Stevenson*, 17 F.2d 748, 750–51 (3d Cir. 1927) (gross negligence implies "a disregard of consequences or a willingness to inflict injury."); *Zhang v. Ridgewood YMCA*, NO. A–3485–09T2, 2011 WL 589586, at *4 (N.J.Super.A.D. Feb. 22, 2011) ("Gross negligence requires indifference to consequences and may be equated to willful or wanton conduct") (internal citations and quotations omitted).

The Defendants urge dismissal of the Plaintiffs' claims of negligence and gross negligence because of the absence of any duty beyond the SIRTA. (Def. Mem. in Supp. at 21–22.)

Plaintiffs appear to allege duties to investigate Westgate in light of red flags (AC f 4); to obtain and hold documents from Westgate (AC ¶¶ 8, 40); to send accurate reports of asset values (AC ¶ 42); and to maintain, preserve and monitor the trust assets in order to prevent wrongful dissipation (AC ¶ 110). These duties are alleged to arise from Defendants' position as a trustee with expertise in IRA custodianship. AC ¶¶ 7, 41, 42, 108–09. Plaintiffs have sufficiently pleaded Defendants' duties, along their subsequent breach and damages.

The AC further alleges that Defendants deliberately breached their duty of care because they benefited from the Westgate scheme and did not want to undermine that relationship or uncover facts which could destroy it. AC ¶¶ 4, 8, 40. This conduct was allegedly intentional, or at least exhibited a reckless disregard for consequences, and is sufficient to form the basis of a claim for gross negligence. *See Cowsert*, 904 N.Y.S.2d at 240; *Zhang*, 2011 WL 589586, at *4.

As discussed above, the SIRTA itself acknowledges in § 5.8(B) a liability for intentional misconduct or negligence by the trustee. This acknowledgement trumps Defendants' contention that the SIRTA bars Plaintiffs' negligence claims.

### e. The Motion To Dismiss The Unjust Enrichment Claim Is Granted

 To state a claim for unjust enrichment in New York[4], a plaintiff must allege that: (1) the defendant was enriched; (2) the enrichment was at plaintiff's expense; and (3) the circumstances were such that equity and good conscience require defendant to make restitution. *Intellectual Capital Partner v. Institutional Credit Partners LLC*, No. 08 Civ. 10580, 2009 WL 1974392, at *8 (S.D.N.Y. Jul. 8, 2009). *See also VRG Corp. v. GKN Realty Corp.*, 135 N.J. 539, 554, 641 A.2d 519 (1994) (under New Jersey law, unjust enrichment claims require a plaintiff to "show both that defendant received a benefit and that retention of that benefit without payment would be unjust."). Unjust enrichment does not require a direct relationship between the parties. *See In re Canon Cameras Litig.*, No. 05 Civ. 7233, 2006 WL 1751245 at *2 (S.D.N.Y. June 23, 2006); *see also Cox v. Microsoft Corp.*, 8 A.D.3d 39, 40–41, 778 N.Y.S.2d 147 (1st Dept.2004).

The AC has alleged that Defendants received fees from Plaintiffs while unjustifiably failing to perform their duties under the agreement. AC ¶¶ 82, 172, 174.

 However, under the law of New York and New Jersey, the existence of a valid and enforceable contract governing a particular subject matter precludes recovery for unjust enrichment arising out of the same matter. *See Chrysler Capital Corp. v. Century Power Corp.*, 778 F.Supp. 1260, 1272 (S.D.N.Y.1991) ("Unjust enrichment is a quasi-contract claim, and the existence of a *valid and enforceable* written contract governing a particular subject matter ordinarily precludes recovery in quasi-contract for events arising out of the subject matter.") (internal quotation marks and citations omitted; emphasis in original); *Hartford Fire Ins. Co. v. Federated Dep't Stores, Inc.*, 723 F.Supp. 976, 994 (S.D.N.Y.1989) ("Unjust enrichment is designed to prevent one person who has obtained a benefit from another without ever entering into a contract with that person from unjustly enriching himself at the other person's expense.") (internal quotation marks and citation omitted); *Shalita v. Twp. of Wash.*, 636 A.2d 568, 571, 270 N.J.Super. 84, 90 (N.J.Super.Ct.App.Div.1994) ("It has been said that [q]uasi-contract liability [should] not be imposed ... if an express contract exists concerning the identical subject matter.") (alteration in original; citations omitted). Plaintiffs cannot raise an unjust enrichment claim where, as here, a valid, enforceable contract governs their relationship with Defendants. Plaintiffs do not defend their unjust enrichment claim in their Response.

---

4. Under New York choice of law rules, interest analysis is applied to claims arising in equity, such as claims for unjust enrichment. *See In re Hydrogen, LLC*, 431 B.R. 337, 359 (Bkrtcy.S.D.N.Y.2010) (citing *Icebox–Scoops, Inc. v. Finanz St. Honore, B.V.*, 676 F.Supp.2d 100, 109–10 (E.D.N.Y.2009)) (applying New York's interest analysis to determine the governing law for an unjust enrichment claim); *In re Grand Theft Auto Video Game Consumer Litigation*, 251 F.R.D. 139, 149 (S.D.N.Y. 2008) (applying the "significant-contacts test" to unjust enrichment claims.) As with the tort claims, the states in which Plaintiffs resided have the most significant contacts, as they are the places of contracting, where performance was to occur, and where Plaintiffs suffered losses. *Grand Theft Auto*, 251 F.R.D. at 149–50. In this case, these states are New York and New Jersey.

Plaintiffs' unjust enrichment claim is dismissed.

### f. The Motion to Dismiss the Negligent Misrepresentation Claim is Granted

■ Plaintiffs fail adequately allege misrepresentations in support of their negligent misrepresentation claim. "Under New York law, the elements for a negligent misrepresentation claim are that (1) the defendant had a duty, as a result of a special relationship, to give correct information; (2) the defendant made a false representation that he or she should have known was incorrect; (3) the information supplied in the representation was known by the defendant to be desired by the plaintiff for a serious purpose; (4) the plaintiff intended to rely and act upon it; (5) the plaintiff reasonably relied on it to his or her detriment." *Hydro Investors, Inc. v. Trafalgar Power Inc.*, 227 F.3d 8, 20–21 (2d Cir.2000). *See also Bondi v. Citigroup, Inc.*, No. BER–L–10902–04, 2005 WL 975856, at *17 (N.J.Super.L.Div. Feb. 28, 2005) ("An incorrect statement, negligently made and justifiably relied upon, may be the basis for recovery of damages for economic loss or injury sustained as a consequence of that reliance.") (citing *H. Rosenblum, Inc. v. Adler*, 93 N.J. 324, 334, 461 A.2d 138 (1983)). As set forth in *Dobroshi v. Bank of America, N.A.*, 65 A.D.3d 882, 886 N.Y.S.2d 106 (1st Dept.2009), " '[l]iability for negligent misrepresentation has been imposed only on those persons who possess unique or specialized expertise, or who are in a special position of confidence and trust with the injured party such that reliance on the negligent misrepresentation is justified.' " *Id.* at 108 (quoting *Kimmell v. Schaefer*, 89 N.Y.2d 257, 263, 652 N.Y.S.2d 715, 675 N.E.2d 450 (1996)).

■ In assessing claims for negligent misrepresentation, courts in this district have applied the heightened pleading standards of Rule 9(b). *See Ebusinessware, Inc. v. Technology Services Group Wealth Management Solutions, LLC*, No. 08 Civ. 9101, 2009 WL 5179535, at *13 (S.D.N.Y. Dec. 29, 2009) (applying Rule 9(b) while noting that the Second Circuit has yet to determine if Rule 9(b) applies to negligent misrepresentation claims); *AIG Global Sec. Lending Corp. v. Banc of Am. Sec. LLC*, 254 F.Supp.2d 373, 389 (S.D.N.Y. 2003) ("A claim for negligent misrepresentation must also satisfy the requirements of Rule 9(b)."); *In re Marsh & McLennan Cos. Sec. Litig.*, 501 F.Supp.2d 452, 495 (S.D.N.Y.2006) ("Negligent misrepresentation claims must be pleaded with particularity pursuant to Rule 9(b)"). "To satisfy the pleading requirements of Rule 9(b), a complaint must (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Wood v. Applied Research Assocs., Inc.*, 328 Fed.Appx. 744, 747 (2d Cir.2009) (citations and internal quotation marks omitted).

It is unclear from the AC what false representation(s) Defendants are alleged to have made. Plaintiffs' negligent misrepresentation count does not identify any particular "false statement," but rather repeats the panoply of "failure to investigate" allegations that underlie Plaintiffs' contract and fiduciary duty counts. *See* AC ¶¶ 122–142. It appears from these allegations that Plaintiffs allege that Defendants negligently misrepresented what they would and would not do under the SIRTA. Regardless, the AC is too vague to meet the pleading standards of Rule 9(b).

### g. The Fraud Claim is Dismissed

■ Plaintiffs' fraud claim does not meet the heightened standards for plead-

ing a fraud claim. "To successfully plead a common law fraud claim, plaintiff must allege a 'material, false representation, an intent to defraud thereby, and reasonable reliance on the representation, causing damage to the plaintiff.'" *S.Q.K.F.C., Inc. v. Bell Atl. Tricon Leasing Corp.*, 84 F.3d 629, 633 (2d Cir.1996) (quoting *Katara v. D.E. Jones Commodities*, 835 F.2d 966, 970–71 (2d Cir.1987)); *Liberty Mut. Ins. Co. v. Land*, 186 N.J. 163, 175, 892 A.2d 1240 (2006) (applying a similar standard).

■ In order to successfully plead a fraud claim in federal court, a complaint "must specify the circumstances constituting fraud 'with particularity.'" *S.Q.K.F.C., Inc.*, 84 F.3d at 633 (quoting Fed.R.Civ.P. 9(b)). As noted above, "[t]o satisfy the pleading requirements of Rule 9(b), a complaint must (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Wood*, 328 Fed.Appx. at 747 (citations and internal quotation marks omitted).

Plaintiffs contend that they need not plead fraud with particularity because the information Principal Trust allegedly withheld regarding the true value of Westgate's funds was in Principal Trust's "exclusive control." Pl. Response at 29, citing *ABF Capital Mgmt. v. Askin Capital Mgmt. L.P.*, 957 F.Supp. 1308 (S.D.N.Y. 1997). However, *ABF* holds that Plaintiffs cannot be expected to plead detailed fraud allegations when the information relevant to their claim is in the exclusive possession of defendant at the time of pleading. *Id.* at 1327. This holding does not apply here because the details of Westgate's fraud are in the public record. Plaintiffs cite to the SEC's complaint in the AC. AC ¶¶ 29–31. Therefore, the information about the alleged fraud is not in Defendants' exclusive control.

■ Plaintiffs' fraud allegations plainly do not meet the pleading standards of Rule 9(b). Plaintiffs' fraud count itself does not identify any fraudulent statement, but refers back to all of the previous allegations of the AC. *See* AC ¶¶ 143–155. The body of the complaint does not contain sufficiently particularized allegations of fraud, either. Plaintiffs do allege that "Principal continuously sent inaccurate and fraudulent IRS form letters and statements to Plaintiffs." AC ¶ 42. However, this vague allegation is not accompanied by any explanation of which particular "IRS form letter" or "statement" was fraudulent, when each such statement was issued, what aspect of the statement was fraudulent and why, or whether the fraudulent information came from Defendants (as opposed to Westgate).

Plaintiffs have also failed to plead fraudulent intent. Plaintiffs must allege facts that give rise to a strong inference of fraudulent intent by "(1) alleging facts to show that defendants had both motive and opportunity to commit fraud, or by (2) alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." *S.Q.K.F.C., Inc.*, 84 F.3d at 634 (citing *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994)). *See also Eurycleia Partners, LP v. Seward & Kissel LLP*, 12 N.Y.3d 553, 559, 883 N.Y.S.2d 147, 910 N.E.2d 976 (2009) (requiring a "reasonable inference") (citations omitted); *Deco Davis, Inc. v. Global Int'l Trading Co.*, No. ESX–L–8130–02, 2007 WL 1582976, at *5–6 (N.J.Super.App.Div. Jun. 4, 2007). The AC contains no well-pleaded allegations that Principal Trust knew of the Westgate Ponzi scheme before law enforcement authorities detected it. The AC also fails to adequately explain why, if Defendants knew of the Westgate scheme, they chose to cover it up. The AC appears to cite the

administrative fees Defendants obtained from managing accounts at Westgate as Defendants' motive for perpetrating fraud. However, under the SIRTA, Principal Trust would collect such fees regardless of which investment choices its Account Holders made. Based on the AC, Principal Trust would gain nothing by inducing Account Holders' continued investment in a known Ponzi scheme but would put itself at great risk. Furthermore, the administrative fees received by Defendants for hosting accounts invested in Westgate are the sort of normal economic motivation that cannot suffice as motive for fraudulent intent purposes. *See Cromer Fin. Ltd. v. Berger,* 137 F.Supp.2d 452, 494–95 (S.D.N.Y.2001) (citing *Primavera Familienstiftung v. Askin,* 173 F.R.D. 115, 127–28 (S.D.N.Y.1997)). *See also Shields,* 25 F.3d at 1130–31.

### h. The Aiding–and–Abetting Fraud Claim is Dismissed

 "A plaintiff alleging an aiding-and-abetting fraud claim must allege the existence of the underlying fraud, actual knowledge, and substantial assistance." *Oster v. Kirschner,* 77 A.D.3d 51, 905 N.Y.S.2d 69, 72 (1st Dept.2010). *See also State v. Qwest Commc'ns Int'l, Inc.,* 387 N.J.Super. 469, 904 A.2d 775, 782–83 (2006) (similar standard) (citations omitted). Plaintiffs fail to allege that Defendants had actual knowledge of the Westgate scheme.

Similar to pleading fraudulent intent, "pleading knowledge for purposes of an aiding and abetting claim requires allegations of facts that give rise to a 'strong inference' of actual knowledge." *Fraternity Fund Ltd. v. Beacon Hill Asset Management, LLC,* 479 F.Supp.2d 349, 367–68 (S.D.N.Y.2007) (quoting *Lerner v. Fleet Bank, N.A.,* 459 F.3d 273 (2d Cir.2006)). To satisfy this standard, Plaintiffs must identify "circumstances indicating conscious behavior by the defendant, or a clear opportunity and a motive to aid the fraud. Ordinary economic motive, however, is insufficient to support the latter alternative." *Cromer,* 137 F.Supp.2d at 494–95 (internal quotation marks and citations omitted). The AC does not allege that Defendants knew of the Westgate scheme. Rather, it alleges that they should have investigated and uncovered it. As discussed above in reference to Plaintiffs' fraud allegations, Defendants had no motive to assist Westgate in perpetrating a fraud on their investors, and any motive would have been ordinary economic motive. Therefore, AC does not allege sufficient facts to give rise to a strong inference of actual knowledge in support of its aiding and abetting claim.

### Conclusion

Based on the foregoing, Defendants' motion to dismiss is granted in part and denied in part. Plaintiffs are granted leave to file an amended complaint with claims under state law within 60 days.

It is so ordered.